# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JENNIFER ORTIZ,

    Plaintiff,

v.                                      Case No:

SMITH & NEPHEW, INC.,

    Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff JENNIFER ORTIZ (hereinafter "Ortiz") hereby sues Defendant SMITH & NEPHEW, INC. (hereinafter "Smith & Nephew"), and in support thereof, states as follows:

### Jurisdiction, Parties and Venue

1. This is an action for unlawful employment practices including race, color, national origin and sex discrimination by Smith & Nephew in violation of the Florida Civil Rights Act of 1992, Florida Statutes Section 760.01, *et seq.* ("FCRA") and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), as well as defamation.

2. Ortiz seeks damages including declaratory and injunctive relief; lost pay and benefits; compensatory and punitive damages; attorneys' fees, costs and expenses; and all other relief this Court deems just and proper.

3. Ortiz is a resident of Tampa, Hillsborough County, Florida.

4. At all relevant times, Ortiz worked for Smith & Nephew remotely from her home address in Tampa, Hillsborough County, Florida.

5. Ortiz is a Hispanic female.

6. At all times relevant to this action and through the date of her termination, Ortiz was an employee of the Smith & Nephew.

7. Ortiz is an aggrieved person within the meaning of Title VII and the FCRA.

8. Smith & Nephew is a Foreign Profit Corporation authorized to do business in the state of Florida.

9. At all relevant times, Smith & Nephew was engaged in an industry affecting commerce and had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

10. Smith & Nephew is an employer within the meaning of Title VII and the FCRA.

11. Venue in this Court is proper as the unlawful employment practices described herein occurred in Hillsborough County, Florida and Ortiz was employed by Smith & Nephew in Hillsborough County, Florida.

12. Ortiz has met all conditions precedent and exhausted all administrative remedies prior to filing suit, including:

   a. Timely filing a *Charge of Discrimination* with the Florida Commission on Human Relations ("FCHR") via dual-filing same through the United States Equal Employment Opportunity Commission ("EEOC");

   b. Receiving a Notice of Right to Sue from the EEOC within 90 days of filing this action; and

   c. Filing this action more than 180 days from the time Ortiz filed her *Charge of Discrimination* without the FCHR issuing a determination on the charge.[1]

---

[1] Ortiz reserves the right to amend this Complaint to add allegations of a second charge currently pending before the EEOC should efforts to resolve the Charge through the administrative procedure fail.

## FACTS

13. Ortiz alleges that Smith & Nephew discriminated and retaliated against her because of her national origin/race/color (Hispanic) and sex (female) when it terminated her employment on the basis of two pre-textual investigations, and defamed her in the industry rendering her virtually unemployable.

14. Ortiz started her employment with Smith & Nephew on or about May 31, 2008.

15. Ortiz worked for Smith & Nephew for approximately 11 years.

16. Smith & Nephew designs, manufactures and sells medical devices.

17. At the time of her termination, Ortiz was the Area Sales Manager (East Zone) for a particular device called the Versajet. The Versajet is a device that a surgeon uses to select, excise and evacuate nonviable tissue, bacteria and contaminants from wounds, burns and soft tissue injuries.

18. During her employment, Ortiz was an exemplary employee.

19. During her employment, Ortiz never received a "deviation" for her conduct on any performance review, all of which were outstanding.

20. It is visibly apparent that Ortiz is non-white.

21. Smith & Nephew has a culture that favors male employees, and employees of European descent, white or Caucasian.

22. Smith & Nephew publishes numerous policies and procedures touting its non-discrimination policy, yet it merely "talks the talk" but fails to "walk the walk."

23. There are virtually no Hispanic employees at Smith & Nephew, and none in a leadership role.

24. Women are disproportionately excluded from leadership positions.

25. Representation of women in leadership roles, and representation by Hispanic women generally, is so dismal at Smith & Nephew, that Sophie Corman, the Director of Human Resources, publicly addressed the issue with upper management in Ortiz's presence shortly after Ortiz was promoted to Area Sales Manager in 2018. The entire management team was present at this meeting.

26. Women know they are the exception to the rule at Smith & Nephew, and if any are promoted, it is a numbers game to save face or they are quickly moved out of the organization to make way for a man, which is exactly what happened here.

27. Ortiz had clinical and medical experience, as well as a business degree when she joined Smith & Nephew as an Associate Product Manager. Caucasian males with no marketing experience were hired or promoted by Smith & Nephew at higher levels. Males walk in and are given a higher title and pay.

28. Ortiz was doubly impacted by Smith & Nephew's discriminatory tactics. Even in the rare circumstance when Smith & Nephew would advance a woman, Ortiz (Hispanic) was passed over for a Caucasian female despite greater experience and a better performance history.

29. Smith & Nephew also purposely eliminated an open position for which Ortiz was selected, rather than increase her salary and status.

30. Smith & Nephew's aversion to persons of color transcends Ortiz's Hispanic background. At the time of her promotion, there were no African American or Hispanic direct reports to the Vice President of Sales or any of the Senior Marketing directors other than Ortiz. At a sales management level, both ethnicities were grossly underrepresented.

31. Smith & Nephew terminated Ortiz on March 22, 2019.

32. Smith & Nephew initially told Ortiz that she was terminated based upon the outcome of two company investigations.

33. The first alleged reason involved a contractor Ortiz hired at the direction of Smith & Nephew.

34. Ortiz was directed by her boss to fill a gap in the Atlanta area at a time when she was only the interim manager.

35. Ortiz hired a subcontractor trained and familiar with Versajet.

36. This was the first time Ortiz hired a 1099 employee, so she sought out the assistance of Smith & Nephew's counsel (Caucasian) during the hiring process.

37. Apparently, both Ortiz and counsel "missed" a step in the hiring process. However, Ortiz handled the process in a reasonable manner that in no way justified termination. Ortiz even corrected the issue once it was recognized after she was promoted to the Eastern Sales Manager position.

38. The Caucasian attorney was not disciplined at all, yet this was a stated reason for Ortiz's termination.

39. Recognizing the biased outcome of this investigation, Smith & Nephew later distanced itself from this stated reason for termination, demonstrating its pre-text.

40. The second alleged reason involved Ortiz's conduct at the John Boswick Burn & Wound Symposium, an international conference regarding the latest advancements in wound healing, burn care, and infection control, designed for physicians, researchers, investigators, nurses, therapists, dieticians, and others interested in development of techniques, treatments, drugs, and devices in the study and management of wound healing, wound management, burn care, and infection control.

41. Ortiz's supervisor reported false allegations about Ortiz to Smith & Nephew's compliance office. Smith & Nephew's investigation into these events was demonstrably discriminatory.

42. Smith & Nephew failed to follow a reasonable or good faith investigation process to reach a reasoned conclusion, failed to interview the health care professionals known to be involved, and failed to seek any independently verifiable evidence to support or refute the strained interpretation of the communications which purportedly formed the basis of Ortiz's termination. Smith & Nephew did so in order to concoct a reason to terminate a Hispanic female employee.

43. Each and every allegation was blatantly illegitimate. At all times, Ortiz acted in compliance with all Smith & Nephew policies and practices.

44. For example, Smith & Nephew claimed that Ortiz was not allowed to buy meals or drinks for the healthcare professionals. This is untrue. If it were true, Smith & Nephew has been violating this regulation/policy for years.

45. Smith & Nephew's internal guidelines not only allow employees to take healthcare professionals out to modest dinners and/or drinks to discuss business for product training purposes, but employees in customer-facing roles, such as sales (like Ortiz), are required to develop relationships with surgeon customers in this manner. Smith & Nephew regularly sends these employees to conferences and also funds large breakfast, lunch, and dinner symposiums. Smith & Nephew further provides each customer-facing employee (like Ortiz) with a corporate credit card to cover not only their cost of travel, but also to cover the cost of a meal or beverage with healthcare professionals where product information is being shared. Any healthcare professional expense is filtered through an entire department dedicated to review this type of spending (called Aggregate spending).

46. Smith & Nephew is plainly set up for this type of activity and demands it. The expectation is specifically listed in the "critical enabler section" of applicable employee's performance reviews, including Ortiz's.

47. Smith & Nephew never disciplined any male or non-Hispanic employee for similar conduct, let alone terminated them, like it did to Ortiz.

48. Ortiz attended this symposium for the past 4 years without issue, along with her Caucasian, male supervisor and co-workers, who likewise engaged in the same conduct, but whom were not disciplined.

49. Regardless, this particular conference provided breakfast, drink tickets, appetizers and a dinner. Therefore, when Ortiz would have a meal with a healthcare provider and/or spouse in one of these circumstances, no Smith & Nephew policy or regulation was triggered.

50. Smith & Nephew also claimed that Ortiz paid for healthcare providers' expenses or excursions at the Symposium, but Ortiz also never planned to pay for these expenses. Instead, another (Caucasian) employee handled the excursion reservations. Despite this fact, Ortiz was terminated.

51. Smith & Nephew claimed that Ortiz was being dishonest during the investigation, yet it never questioned the veracity of the Caucasian, male supervisor, the person supplying the false information, in accordance with its custom and culture of supporting Caucasian males, and giving no support whatsoever to persons of color.

52. Smith & Nephew also claimed that Ortiz gave out protected health information, in violation of its HIPAA policy, but this too was untrue. The innocuous information that was the basis of this allegation was nothing more than vague information shared in-house on a regular

basis in accordance with Smith & Nephew's policies. No Caucasian or male employee has been disciplined, let alone terminated, for this conduct.

53. Smith & Nephew did not contact a single healthcare provider involved to verify the false allegations, even though at least one involved a physician with whom Smith & Nephew contracted to attend the event. If Smith & Nephew had interviewed any providers, they would have quickly verified that Ortiz's conduct violated no ethics policies whatsoever. The physicians are willing to be interviewed, but Smith & Nephew did not want to hear what they had to say. Instead, Smith & Nephew jumped on an opportunity to mischaracterize Ortiz's conduct to manufacture a reason to push her out.

54. Each and every false finding demonstrates Smith & Nephew's pretext. Stated simply, Ortiz was terminated for conduct every other Caucasian male employee at Smith & Nephew engaged in without incident and with full company knowledge and support.

55. Smith & Nephew replaced Ortiz with a Caucasian male.

56. Smith & Nephew later shifted from its stated reason for Ortiz's termination, likewise demonstrating pretext. Smith & Nephew later claimed that the termination was based solely on the wound symposium investigation, and the new-hire investigation had never even been completed.

## COUNT I
### Discrimination in Violation of the FCRA

57. Ortiz incorporates Paragraphs 1 through 56 above as if fully set forth herein.

58. The FCRA forbids Smith & Nephew from discriminating on the basis of an employee's national origin, race, color and/or sex.

59. Ortiz is a member of a protected class in that she is Hispanic.

60. Ortiz is a member of a protected class in that she is female.

61. Ortiz was qualified for the position she held with Smith & Nephew.

62. Smith & Nephew purposefully and intentionally terminated Ortiz because of her national origin, race, color and/or sex.

63. Smith & Nephew acted intentionally, purposefully, willfully, maliciously and/or with reckless indifference to Ortiz's protected rights by unfairly disciplining her, harassing her, terminating her and adversely affecting her employment benefits based on her national origin, race, color and/or sex.

64. As a result of Smith & Nephew's actions, Ortiz suffered lost wages and benefits, emotional distress, humiliation, shame, loss of self-esteem and dignity, mortification, disgrace, embarrassment, loss of enjoyment of life, and mental anguish, and Ortiz will continue to suffer said damages in the future.

65. Ortiz has had to retain counsel and incur attorneys' fees and costs connected with this action.

66. Ortiz is entitled to recover her attorneys' fees, costs and other litigation expenses from Smith & Nephew as a prevailing party pursuant to the FCRA.

**WHEREFORE**, Ortiz respectfully requests that this Court:

A. Enter a judgment in favor of Ortiz and against Smith & Nephew declaring that Smith & Nephew unlawfully discriminated against Ortiz in violation of the FCRA; and/or

B. Issue a mandatory injunction requiring Smith & Nephew to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that Smith & Nephew's employees are not subjected to discrimination; and/or

C. Reinstate Ortiz to employment with Smith & Nephew, or, in the alternative, award Ortiz front pay; and/or

D. Award Ortiz all lost pay and benefits; and/or

E. Award Ortiz additional monies for tax liability that does result if damages awarded to Ortiz pushes her into a higher tax bracket; and/or

F. Award Ortiz such other nominal, general, compensatory and other damages available under the FCRA; and/or

G. Awarding Ortiz punitive damages;

H. Award Ortiz pre-judgment and post-judgment interest; and/or

I. Award Ortiz her costs, expenses and attorneys' fees pursuant to the provisions of FCRA; and/or

J. Retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein; and/or

K. Grant such additional relief as this Court deems just and proper.

## COUNT II
### Discrimination in Violation of Title VII

67. Ortiz incorporates Paragraphs 1 through 56 above as if fully set forth herein.

68. Title VII prohibits Smith & Nephew from discriminating against an employee on the basis of national origin, race, color and/or sex.

69. Ortiz is a member of a protected class in that she is a Hispanic and she is female.

70. Ortiz was qualified for the position she held with Smith & Nephew.

71. Smith & Nephew purposefully and intentionally terminated Ortiz because of her national origin, race, color and/or sex.

72. Smith & Nephew acted intentionally, purposefully, willfully, maliciously and/or with reckless indifference to Ortiz's protected rights by unfairly disciplining her, harassing her, terminating her and adversely affecting her employment benefits based on national origin, race, color and/or sex.in violation of Title VII.

73. As a result of Smith & Nephew's actions, Ortiz suffered lost wages and benefits, emotional distress, humiliation, shame, loss of self-esteem and dignity, mortification, disgrace, embarrassment, loss of enjoyment of life, and mental anguish, and Ortiz will continue to suffer said damages in the future.

74. Ortiz has had to retain counsel and incur attorneys' fees and costs connected with this action.

75. Ortiz is entitled to recover her attorneys' fees, costs and other litigation expenses from Smith & Nephew as a prevailing party pursuant to Title VII.

**WHEREFORE**, Ortiz respectfully requests that this Court:

A. Enter a judgment in favor of Ortiz and against Smith & Nephew declaring that Smith & Nephew unlawfully discriminated against Ortiz in violation of Title VII; and/or

B. Issue a mandatory injunction requiring Smith & Nephew to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that Smith & Nephew's employees are not subjected to discrimination; and/or

C. Reinstate Ortiz to employment with Smith & Nephew, or, in the alternative, award Ortiz front pay; and/or

D. Award Ortiz all lost pay and benefits; and/or

E. Award Ortiz additional monies for tax liability that does result if damages awarded to Ortiz pushes her into a higher tax bracket; and/or

F. Award Ortiz such other nominal, general, compensatory and other damages available under Title VII; and/or

G. Awarding Ortiz punitive damages;

H. Award Ortiz pre-judgment and post-judgment interest; and/or

I. Award Ortiz her costs, expenses and attorneys' fees pursuant to the provisions of Title VII; and/or

J. Retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein; and/or

K. Grant such additional relief as this Court deems just and proper.

## COUNT III
## Defamation

76. Ortiz incorporates by reference the allegations set forth in paragraphs 1 through 56 above as if fully restated herein

77. After it wrongfully terminated Ortiz's employment, Smith & Nephew defamed Ortiz and irreparably damaged her professional reputation and psyche.

78. Smith & Nephew told at least one renowned and influential surgeon that Ms. Ortiz was being investigated for other compliance-related issues and implied that these type of incidents (surgeon inducement and entertainment) had happened before.

79. Smith & Nephew made this and similar statements without privilege or justification, without conducting any reasonable due diligence, and without any need whatsoever, proactively implying to members of the medical community that Ortiz had a history of nefarious, unethical or unlawful behavior which is blatantly untrue.

80. Ortiz demanded that Smith & Nephew cease and desist, but it refused.

81. Not only did Smith & Nephew refuse to stop defaming Ortiz, it escalated its smear campaign to include other healthcare providers, customers and contractors.

82. Smith & Nephew published false and defamatory statements of and concerning Ortiz.

83. Smith & Nephew published these false and defamatory statements knowingly, intentionally, and/or without reasonable care as to the truth or falsity of the statements.

84. The false statements about Ortiz were defamatory *per se*, as they tended to and did subject Ortiz to public ridicule, humiliation, and disgrace and tended to injure and did injure Ortiz in her trade, business or profession.

85. As a direct and proximate result of Defendant's defamatory statements, Ortiz suffered significant damages, including damage to her reputation, shame, humiliation, mental suffering, emotional distress, loss of employment and business opportunities, and other harms, all of which are ongoing and will continue in the future.

86. Ortiz also will incur and is entitled to recover significant expenses for repairing her reputation.

87. The re-publication of Smith & Nephew's defamatory statements was reasonably foreseeable and caused Ortiz to suffer additional damages.

88. Consequently, Ortiz is entitled to recover actual, compensatory and special damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Ortiz prays that this Court:

A. Award Ortiz actual, compensatory, and special damages for defamation; and

B. Grant such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ortiz demands a trial by jury on all issues so triable.

Dated: February 14, 2020.

Respectfully submitted,

_s/ Amanda L. Biondolino_
Cynthia N. Sass, Esquire
Florida Bar No. 0691320
Amanda L. Biondolino, Esquire
Florida Bar No. 1008493
**SASS LAW FIRM**
601 West Dr. Martin Luther King, Jr. Boulevard
Tampa, Florida 33603
Telephone: (813) 251-5599
Facsimile: (813) 259-9797
**DESIGNATION OF E-MAIL SERVICE**:
**Primary**: csass@sasslawfirm.com
**Secondary**: reception@sasslawfirm.com
bcruz@sasslawfirm.com
**Primary**: abiondolino@sasslawfirm.com
**Secondary**: reception@sasslawfirm.com
jolney@sasslawfirm.com